*In re* MARRIAGE OF LELA J. SCHRINER, Petitioner-Appellee, and DONALD J. SCHRINER, Respondent-Appellant.

Second District    No. 79-452

Opinion filed September 11, 1980.

John R. LeComte, of Savanna, for appellant.

David F. Rolewick, of Wheaton, and John F. Joyce, of Mt. Carroll, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Respondent, Donald J. Schriner (husband), appeals from those portions of a divorce decree which distributed the parties' property and ordered respondent to pay maintenance and attorney's fees to petitioner, Lela J. Schriner (wife).

The parties were married on July 4, 1970. Wife and her two children from a former marriage moved into husband's farmhouse. On September 30, 1972, the parties had a son, Terry Schriner. At the time of the parties' marriage, husband owned the farmhouse and 12 acres which he had purchased in 1966 for $10,000. In addition, he had over $2,500 in his checking account and $1,600 in savings. Husband also owned a truck, an automobile and various farm equipment and livestock. Wife brought with her into the marriage various household goods and an automobile. Three to

four days prior to the marriage the parties selected a bedroom set which was purchased by husband. The set was delivered after their marriage.

During the marriage the parties made substantial improvements to the marital home. The house was reroofed, new siding was applied, a new furnace installed, the kitchen and living room were paneled, the bathroom was remodeled and the porch enclosed. Wife testified that she assisted husband with these jobs, and in addition she and her mother wallpapered two bedrooms, the hallway, the stairs, and the den.

Sometime during the marriage, the parties purchased a house at 210 East Franklin (Franklin property) for $6,000. The property is presently valued at $10,000 to $15,000, and is rented for $100 per month.

Wife left husband on December 26, 1978. At the time she left, there was $4,000 in the checking account, $200 in savings, a $1,000 C.D. and a $2,000 C.D. The savings account was in both husband's and wife's names; the checking account and the C.D.'s were in husband's name only. Shortly after wife left, husband cashed the $2,000 C.D. and used the money to purchase an automobile, to pay his attorney's fees and his 1978 income tax.

Wife filed suit for divorce on December 26, 1978. The hearing on the grounds was held on February 23, 1979, and the property distribution hearing occurred on March 19, 1979. The property hearing disclosed that husband is a self-employed carpenter earning $5.50 per hour. Husband claims he earns $7,000 to $9,000 per year, while wife claims he earns $10,000 to $12,000 per year. Wife claims husband's 1978 tax returns, which indicated he earned $7,413.20, were falsified, and that he did not declare his cash income. Husband admitted not reporting $150 cash income in 1978. Husband testified his expenses were approximately $325 per month.

At the time of the hearing, wife was earning $65 to $75 per week net as a cashier at a supermarket. She is presently working for a radio station earning $78 per week net plus commission. Her first month's gross income including commission was $460. Wife did not work during the marriage, apparently at husband's insistence.

There was little specific evidence of wife's expenses presented at the hearing. However, the wife testified that she could not make ends meet with the income she was receiving at the time of the separation. At the property hearing, wife stated that she paid $150 per month rent and $10 per month for medicine for her son. Finally, the testimony disclosed that there were no debts of the marriage, and all property was unencumbered.

On April 2, 1979, the trial court entered judgment dissolving the parties' marriage. Custody of the parties' minor child was given to wife, and husband was ordered to pay $40 per week in support and $15 per week in maintenance. Husband was awarded the farm and house as his own nonmarital property, while wife was awarded the Franklin Street property. In addition, wife was awarded the three-piece bedroom set and

$2,500 in cash, the latter representing half of the parties' savings at the time of the divorce. Husband was ordered to pay $300 of wife's attorney's fees and $72 in court costs.

On July 30, 1979, the trial court denied husband's motion for a new trial, and on August 20, 1979, husband filed his first notice of appeal. Then on August 21, 1979, the trial court ordered respondent to pay $1,500 for petitioner's attorney's fees on appeal. On August 2, 1979, respondent filed an amended notice of appeal adding a challenge to the award of attorney's fees on appeal.

Four issues are presented for review: (1) whether the trial court erred in its characterization of the parties' marital and nonmarital property, (2) whether the trial court's distribution of marital property was an abuse of discretion, (3) whether the trial court's award of maintenance to petitioner was an abuse of discretion, and (4) whether the trial court's award of attorney's fees was an abuse of discretion.

## I.

■■ Under the statutory scheme of the Illinois Marriage and Dissolution of Marriage Act, the trial court is first required to divide the parties' property into marital and nonmarital property. The court must then assign each spouse his own nonmarital property. (Ill. Rev. Stat. 1979, ch. 40, par. 503.) All property acquired during the marriage is presumed to be marital property unless the presumption is overcome by a showing that it falls within one of the statutory exceptions, including property acquired before marriage, and property acquired in exchange for property acquired before marriage. The party claiming that the property is nonmarital has the burden of proof. *In re Marriage of Amato* (1980), 80 Ill. App. 3d 395, 399 N.E.2d 1018.

Husband first contends that the bedroom set, which was purchased by him 3 to 4 days prior to marriage, is nonmarital property, and therefore was improperly awarded to petitioner. The trial court concluded that the bedroom set was a gift purchased in contemplation of marriage with the intent to be used jointly and therefore became marital property.

In *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517, the court concluded that a spouse could, by express or implied agreement, transmute nonmarital property into marital property. In *Klingberg*, the spouses' act of placing nonmarital funds in a joint checking account which was used by both parties during the marriage for their mutual benefit evidenced an intent to treat the property as marital property. Under this analysis, husband's purchase of the bedroom set with wife's assistance in selection is indication of an intent to transmute the property into marital property.

■■ In *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065,

the parties purchased a home less than two months before the marriage, taking title in joint tenancy. The court found that the house was properly categorized as marital property as it was purchased in contemplation of the marriage and, other than the downpayment, all equity in the property resulted from payments and improvements made during the marriage. (See also *In re Marriage of Altman* (1974), 35 Colo. App. 183, 530 P.2d 1012.) Although the bedroom set in the instant case was paid for entirely before the marriage, we believe that this distinguishing factor does not take this case outside of the *Stallings* holding. The bedroom set was not purchased for the husband's sole use, and as in *Klingberg*, the unrestricted use of the property by both parties for their mutual benefit resulted in a transmutation of the nonmarital asset into a marital asset.

Husband also challenges the failure of the trial court to compensate him for his premarital savings of approximately $4,000. Husband contends he should either be given $4,000 of the parties' cash assets as nonmarital property or a $4,000 interest in the Franklin Street property. The evidence tracing husband's checking and savings accounts is not entirely clear from the record. On July 4, 1970, husband had slightly over $4,000 in his savings and checking accounts. The parties apparently continued to add to this amount until they purchased the Franklin Street property for $6,000 at which time the savings was substantially depleted. At the time wife left husband their assets again totaled over $7,000.

This court recently held that the commingling of marital and nonmarital assets indicates an intent to treat the property as marital. (*In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 396 N.E.2d 859; *In re Marriage of Amato*.) In *Amato*, the husband's nonmarital funds were used in conjunction with marital funds to construct the marital residence. That action caused the residence to be characterized as marital property.

■■■ In this case, the respondent's nonmarital funds were used in conjunction with the parties' marital funds to purchase the Franklin property. Under *Amato*, the Franklin property is therefore marital property, and thus respondent is not entitled to a $4,000 credit. Neither is respondent entitled to a $4,000 credit on the parties' savings since his act of commingling his premarital savings with marital savings transmutes the funds into marital property. *Smith*, 77 Ill. App. 3d 858, 865, 396 N.E.2d 859, 865.

## II.

■■ Husband next contends that the trial court erred in its distribution of the marital property in that the wife was awarded substantially all of the marital property while he was only given his own nonmarital property. Section 503(c) of the Illinois Marriage and Dissolution of Marriage Act provides that the trial court shall divide the marital property in just pro-

portions after considering all relevant factors. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) The court is required to make an equitable distribution, not necessarily an equal one. (*In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029, 395 N.E.2d 762.) Among the factors which the statute considers to be relevant to the property distribution are the value of the property allocated to each spouse, the contribution or dissipation of each party to the value of the marital and nonmarital property, custodial provisions for the children, and the opportunity of each spouse for future acquisition of assets. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) In this case, the trial court awarded the Franklin Street property to the wife with the view of providing a stable home for the minor child. Husband argues that this purpose is not met by the award of the Franklin Street property since the wife does not live there and apparently does not intend to do so. However, the property does provide a regular source of income which can then be used toward the payment of her rent.

In addition, the award of the Franklin Street property to the wife can be justified in light of the husband's substantial nonmarital assets. Subsection (c)(2) of section 503 specifically allows the trial court to consider the value of the property set aside to each spouse. This provision does not specify consideration only of the marital assets. Since respondent was awarded the farmhouse which was valued between $62,000 and $70,000, the allocation to the wife of a $10,000 to $15,000 asset was appropriate.

Finally, there are two other factors which justify the trial court's award. First, the wife testified that her efforts increased the value of the farmhouse. Section 503(c)(1) specifically provides that the court may take into consideration in awarding marital property the spouse's contribution to the appreciation in value of the other's nonmarital property. In *In re Marriage of Glidden* (1979), 71 Ill. App. 3d 376, 389 N.E.2d 657, this court acknowledged the right of the trial court to compensate a spouse who contributes to the value of the other's nonmarital property by allocating to him a disproportionate share of the marital property. This same factor could have properly influenced the trial court in the instant case. The trial court may have also considered the fact that the husband used approximately $2,000 of marital assets to purchase his automobile and pay his attorney's fees and income taxes after the parties separated. The use of marital property for the sole benefit of one of the spouses and for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown is considered to be a dissipation of marital assets. (*Klingberg.*) Since that amount should have been considered when the trial court divided the savings accounts, petitioner would have been entitled to an additional $1,000. For these reasons, we conclude that the trial court's distribution of the marital assets was not an abuse of discretion.

## III.

■■ Under section 504 of the Illinois Marriage and Dissolution of Marriage Act, the trial court can award maintenance to either party upon a showing that the party lacks sufficient property or income to provide for his reasonable needs. The evidence establishes that petitioner's income is as follows:

| | |
|---|---|
| Gross income | 460.00/mo. |
| Child support | 173.33/mo. (from husband) |
| Rent (Franklin Prop.) | 100.00/mo. |
| TOTAL | 733.33/mo. |

The husband contends that there was insufficient evidence in the record concerning the wife's expenses to justify the maintenance awarded.

The record discloses that the wife pays $150 per month in rent and $10 per month for medicine. There is also uncontradicted testimony by the wife that she was currently unable to make ends meet. While more specific evidence of expenses would have been desirable, given the above testimony we conclude that the trial court did not abuse its discretion in awarding the wife $65 per month in maintenance.

## IV.

The trial court is authorized to award reasonable attorney's fees after considering the financial resources of the parties. (Ill. Rev. Stat. 1979, ch. 40, par. 508(a).) It is frequently stated that the party seeking an award of fees must establish his own inability to pay and the other spouse's ability to do so. (See, *e.g., Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282.) This is a different standard then for awarding maintenance discussed above. Also, there was no evidence that given the additional income from maintenance, the wife was unable to pay her own attorney's fees.

Accordingly, we reverse the trial court's awards of attorney's fees and remand this case for further determination of the wife's expenses. In all other respects the judgment of the Circuit Court of Carroll County is affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.