*In re* MARRIAGE OF WILLIAM C. JONES, Petitioner and Counterrespondent-Appellee, and CORINNE JONES, Respondent and Counterpetitioner-Appellant.

First District (1st Division)    No. 81-824

Opinion filed February 16, 1982.

Feiwell, Galper & Lasky, of Chicago, for appellant.

Griffith and Jacobson, of Chicago, for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following trial on the matter, the circuit court of Cook County entered a judgment for dissolution of marriage of the wife, Corinne Jones, and the husband, William C. Jones. On appeal, the wife contends that the trial court erred: (1) in its classification and division of property between the parties; (2) in its allocation of property between the parties; (3) in its failure to award maintenance to the wife; (4) in its order requiring the immediate sale of the marital residence; and (5) in its order that attorney fees of both parties be paid from the proceeds of sale of the marital residence.

The record discloses that the parties were married in May 1955, and that the parties had four children, one of whom is a minor and one of whom is deceased. In 1957, the husband commenced working for his

father, Horry Jones, at Jones Metabolism Co. Jones Metabolism Co. was the exclusive sales agent for Medical Instruments Co., which manufactured basal metabolism equipment. Both of these companies were owned by the father and business was conducted on Honore Street in Chicago, Illinois. In 1960, the husband developed a device which measured pulmonary functions and was sold under the trade name "pulmonor." An account was established under the name "Jones Medical Instrument Co." for the income and expenses generated by the "pulmonor." Expenses for the construction of the pulmonor which were initially billed to one of the father's companies were repaid to the father's companies through funds from the parties' joint account. From 1960 until the death of Horry Jones in 1969, the parties listed the income and expenses generated by the "pulmonor" on Schedule C of their personal income tax returns.

In 1969, following the death of Horry Jones, the two companies of the father were merged into one entity, Jones Medical Instrument Co., Inc. Subsequent to the merger, the parties no longer listed income and expenses from the "pulmonor" on their personal income tax returns. From the record, it appears that after the merger of the two companies of Horry Jones, the operations of the business involving the "pulmonor" which was started in 1960 were absorbed or consolidated with the two merged companies. The record also discloses that the use of basal metabolism equipment which was sold by the father had become obsolete at the time of the merger and that following the father's death, there was little business generated through sales of this equipment.

On December 31, 1968, the father negotiated an agreement whereby Jones Metabolism Co. and Medical Instruments Co. would purchase 50% of the stock in each of the two companies which were owned by the husband's sister for a total purchase price of $86,500. It appears that at the time this agreement was executed, the sister did not own stock of either company and that the purchase agreement would have prospective application upon the death of Horry Jones. On the first corporate income tax return for Jones Medical Instrument Co., Inc., which was filed after the death of the father, the book value of the merged entities was listed at $193,571. Testimony established that the only assets of the father's companies at the time of his death were the Honore Street property which was later sold for $35,000 and inventory which was valued at between $5,000 and $25,000.

From the record, it appears that in 1968, a parcel of property on which to conduct the business was purchased in Oak Brook, Illinois. According to the uncontradicted testimony of the wife, funds for the purchase and construction of the Oak Brook facilities were derived from the sale of the Honore Street property ($35,000), loans from the children's bank accounts ($37,000) and from the parties' joint savings account

($81,000). At the time the operations were moved to Oak Brook, much of the inventory which remained from the father's businesses was abandoned.

During the course of the trial, testimony concerning the value of Jones Medical Instrument Co., Inc., disclosed that the corporate books for the period ending June 30, 1980, showed that the book value of the company was $384,041. The Oak Brook property was valued by the corporation at $476,656. Also reflected on the corporate balance sheet were loans to the husband in the amount of $72,249. The corporation also was indebted to the parties' three children in the sum of $37,000 and was indebted to the husband's sister in the amount of $56,605. The amount owed to the husband's sister was the outstanding balance due from the purchase of the stock which she inherited from the father. Three appraisers testified that in 1980 the value of the Oak Brook property which included land and improvements was $625,000, $590,000 and $500,000. The appraiser who valued the property at $500,000 in 1980 testified that in 1978, he had valued the property at $470,000 and that, since 1978, property values in Oak Brook have increased at the rate of 10 to 20 percent. According to testimony from accountants, if the corporate assets, such as the real estate, were valued at less than fair market value on the corporate books, then the book value of the corporation would have to be increased to arrive at a sum which would reflect the increased actual value of the corporation.

The husband maintained two Visa and one American Express charge accounts which were used by the parties. Numerous items, such as camera equipment, meals, clothing and other personal items were purchased on the Visa accounts and travel expenses, both business and pleasure, were charged to the American Express account. The bills incurred on these charge accounts were paid by Jones Medical Instrument Co., Inc. During 1979, the parties charged approximately $18,000 on the two Visa accounts and, in 1980, approximately $22,000 in purchases were charged to the two accounts. According to the wife, the company also paid for automobile and housing expenses from September 1977 through 1978. The husband testified that the foregoing expenses were charged to his "262 Account" at the company and that the funds received by the husband from the "262 Account" were advanced to the husband. During the course of the marriage, the parties have travelled throughout the United States. They also have travelled to the Soviet Union, Europe, Mexico and Canada. The husband travelled to Latin America in search of lost treasure. From the record, it appears as if the corporation paid for the expenses incurred on these trips.

Prior to the parties' marriage in 1955, Horry Jones established a stock trust for the husband. In 1971, the trust was valued at $141,474 and as of July 31, 1980, the portfolio was worth $201,463. It appears from the record

that all but a small portion of the income generated by this trust was added to the trust corpus and reinvested in other income-producing securities. During the course of the marriage, the parties reported the income earned by the stock trust on their joint tax returns.

The parties owned a home in Oak Brook, Du Page County, Illinois, which is where they both have resided during the pendency of this action. The home was purchased for $310,000 in 1975 from the husband's attorney. The parties paid for the home with $100,000 in cash with the balance being financed through a $156,000 loan from the seller and a $60,000 mortgage. At the time of these proceedings, the note given to the seller has been in default since 1978 and a notice of default was served upon the husband in July 1980, although no action to foreclose has been taken. Two appraisals of the marital home established the value of the home at $344,000 and $375,000. At the time of the proceedings, the outstanding balance on the encumbrances was approximately $114,000.

On January 19, 1981, the court entered judgment for dissolution of marriage of the parties, made its findings and provided for the division of the property of the parties. The court found that the husband inherited all of the stock of Jones Medical Instrument Co., Inc., from his father and that at the time of his father's death, the corporation was worth $193,571 which was the separate property of the husband. The court determined that the adjusted book value of the corporation as of June 30, 1981, was $415,055 and that the increase in the value of the corporation subsequent to the death of Horry Jones was marital property. The court found that the husband's pension and profit sharing plan was worth approximately $103,000 and that the husband's interest in this plan was marital property. The court deemed the stock trust established by Horry Jones for the husband to be nonmarital property. The court found the marital home of the parties to be marital property and that the home was worth not less than $344,000. The court found the home to be a financial burden on the parties and economically unfeasible for either party to retain the home, and therefore, ordered that the parties immediately sell the home. The court also ordered that the attorney fees incurred by the parties during the dissolution proceedings be paid from the sale proceeds. Following payment of the attorney fees and other costs incurred in the sale of the home and satisfaction of the encumbrances, the parties were to divide the net proceeds received from the sale of the home. The court ordered the husband to pay to the wife, in lieu of maintenance, the sum of $200,000, payable at the rate of $20,000 per year in equal monthly installments of $1,666. The court found that the wife did not have any present skills for employment, but that she would be able to support herself in the future.

The following is a breakdown of the court's allocation of marital and nonmarital property from the major assets of the parties:

|  | MARITAL | NON-MARITAL |
|---|---|---|
| Jones Medical Instrument Co., Inc. | $221,484 | $193,571 |
| Pension and Profit Sharing Plan | 103,000 | |
| Stock Trust | | 201,463 |
| Marital Home (Market Value less encumbrances) | 230,000 | |
| TOTAL | $554,484 | $405,034 |

This court raises *sua sponte* the failure of the parties hereto to comply with the venue provisions of section 104 of the Illinois Marriage and Dissolution of Marriage Act, which states, in pertinent part:

"The proceedings shall be had in the county where the petitioner or respondent resides, * * *. Objection to venue is barred if not made within such time as the respondent's response is due. In no event shall venue be deemed jurisdictional." (Ill. Rev. Stat. 1979, ch. 40, par. 104.)

We find misplaced the parties' reliance on their failure to object to improper venue as authority for this action to be brought in the circuit court of Cook County, rather than in the circuit court of Du Page County, which county is where both parties presently reside. We are not aware of any experience in the family law area or authority that demonstrates that the legislature intended the unlimited filing of such actions in any court in the State without any nexus whatsoever and without the necessity of any application to fix a substitute venue. We are not convinced that the statute mandates such a narrow construction or restricted view allowing the parties to ignore the venue requirements and proceed to disregard the clear direction of the statute. This posture permits the parties to forum shop and possibly may add to the burden of crowded court calendars and enforcement problems of support orders.

■■ We reject the contention that section 104 is meaningless and that the legislative direction as to venue may be ignored upon the parties' election or that the trial court is without authority to transfer an action to an appropriate county. In construing a statute the language should be given its plain and ordinary meaning and the intent of the legislature should be determined and given effect. (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 429 N.E.2d 492.) A statute should be construed, if possible, so that no word, clause or sentence is rendered meaningless or superfluous and "the legislature will not be presumed to have done a useless act." (*Arnold v. Board of Trustees* (1981), 84 Ill. 2d 57,

61, 417 N.E.2d 1026, 1028.) By its terms, section 104 governs venue and it is reasonable to assume that the legislature did not intend to confer upon the parties to a dissolution proceeding the unfettered right to select any forum, and possibly an appellate district, except as provided in that section. We find that the meaning of the legislature is free from doubt and unambiguous and the only legitimate function of this court is to give it effect as written. (*Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227.) Under circumstances such as those which exist in this cause, it is incumbent upon the parties to timely advise the court that the forum selected is not one of proper venue, and having apprised the court of this, to attempt to secure an appropriate order from the court allowing a waiver of improper venue.[1] Despite the failure of the parties to comply with section 104, we hesitate to dispose of the appeal on this issue, and we elect to entertain the appeal.

The wife first contends that the trial court erred in finding that any portion of Jones Medical Instrument Co. was nonmarital property. She argues that the company which emerged after the death of the husband's father was the company which was formed by the parties in 1960. She argues that the equipment sold by the father's company had become obsolete and that the company was, at best, worth between $40,000 and $60,000. In the alternative, she claims that even if the trial court was correct in its determination that the company was inherited from the father and was, therefore, nonmarital property, the commingling of the assets and operations of their business with the father's company results in the nonmarital property being transmuted into marital property. (See *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 635.) The wife urges that the trial court erred in its failure to classify the stock trust which was established by the husband's father prior to marriage as marital property. The wife contends that the corpus of the trust increased in value during the course of the marriage and that this increase should be deemed marital property because marital funds were used to preserve and enhance the trust. The wife also argues that the court erred in its valuation of Jones Medical Instrument Co. She asserts that the court determined the book value of the corporation to be $384,041 as of June 30, 1981. At that time, the Oak Brook property and improvements were valued by the corporation at $476,656. She claims that the fair market value of the Oak Brook property and improvements were substantially higher. She points to two appraisals which value the property at $590,000 and $625,000. She also indicates that a third appraiser valued the land and building at

---

[1] We note that a similar venue problem exists in *In re Marriage of Sales* (Docket No. 80-3045) which currently is pending in this court. In that case, the parties were residents of Lake County, Illinois, at the time dissolution proceedings were commmenced in the circuit court of Cook County.

$500,000, but that this third appraisal was not credible and was contradictory because that appraiser was not a member of an organization composed of recognized experts and also because the appraiser valued the property at $480,000 in November 1978, and stated that real estate values in the area have increased 10 to 20% since the November 1978 appraisal. She states that after the court considered the market value of the property and improvements, it only increased the book value of the corporation $31,014 to $415,055 and, in light of the appraisals which showed a difference in fair market value and book value of closer to $100,000, this constitutes gross error.

The husband argues that the trial court was correct in its finding that he inherited all of the stock in Jones Medical Instrument Co. from his father and that this inherited property is nonmarital property pursuant to section 503(a) of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1979, ch. 40, par. 503(a).) He urges that the trial court did not err in its finding that the value of the inherited corporation was $193,571 since it based its finding upon the income tax return for the corporation for the year ending July 31, 1969, which date is shortly after the father's death. He argues that the wife's reliance on In re Marriage of Rogers is misplaced because Rogers and In re Marriage of Smith (1981), 86 Ill. 2d 518, make it clear that the commingling of marital and nonmarital property, standing alone, is not sufficient to transform nonmarital property into marital property. The husband also urges that the trial court was correct in its classification of the stock trust as nonmarital property. The husband argues that the stock trust was properly classified as nonmarital property and that the trial court properly found that the appreciation in the trust was also nonmarital property. (See In re Marriage of Komnick (1981), 84 Ill. 2d 89, 417 N.E.2d 1305.) The husband asserts that the payment of taxes does not constitute the preservation or enhancement of the stock trust. In support of his claim that the court properly valued Jones Medical Instrument Co., the husband postulates that the trial court may have considered the three appraisals and added $105,000 to the book value of the Oak Brook property. The husband suggests that the trial court then deducted $74,000 from the book value of the corporation to reflect the loans from the corporation. He argues that under this formula, there would be a net increase in the book value of approximately $31,000.

Pursuant to section 503 of the Illinois Marriage and Dissolution of Marriage Act, the court is to classify property as either marital or non-marital for the property division upon dissolution of marriage. (Ill. Rev. Stat. 1979, ch. 40, par. 503.) There is a presumption that property acquired during the marriage is marital property, although this presumption is negated where property is acquired by descent. (Ill. Rev. Stat. 1979, ch.

40, par. 503(a)(1).) Although property may be deemed to be nonmarital property, its character may be transformed into marital property where the nonmarital property is commingled with marital property. (See *In re Marriage of Smith* (1981), 86 Ill. 2d 518.) In *Smith*, the supreme court held that where a spouse who holds nonmarital property causes it to be commingled with marital property, the commingled property becomes marital property. The supreme court also has rejected the notion that property may have dual characteristics, that is, a nonmarital and a marital component. (See *In re Marriage of Komnick* (1981), 84 Ill. 2d 89, 417 N.E.2d 1305.) In other words, property is either marital or nonmarital and not a combination of the two.

■■ Our review of the record discloses that the company which was begun in 1960 was operated separate and apart from the father's companies and that the only connection with the husband's business and the father's companies was that the husband would purchase materials from the father's business and then reimburse the father's business for the expenses. Additionally, the basal metabolism equipment which the father's companies manufactured and sold had become obsolete and, at the time of the father's death, there was virtually no market for equipment of this nature. On the other hand, the business begun by the husband in 1960 had become a moderately successful entity at the time of Horry Jones' death. Furthermore, the parties included in their gross income the earnings from the business begun in 1960 until the time of the father's death. Upon the father's death, the husband operated the company with a strong emphasis on the products which he had developed and, more or less, phased out sales of the basal metabolism equipment. Following the father's death, it appears that the operations of the father's company and the business begun in 1960 were combined and there was no attempt to segregate the operations of either. At the time that proceedings were held in this action, there was no way to ascertain what, if anything, remained of the father's business. Implicit in our determination that the two businesses were commingled is the recognition that the parties used monies from their accounts to pay for various expenses, including the Oak Brook property, associated with the operations of the business begun in 1960. Accordingly, we hold that the business begun in 1960 by the parties and now known as Jones Medical Instrument Co., Inc., is marital property because the parties' business was commingled and intertwined with the father's business following his death. (See *In re Marriage of Smith* (1981), 86 Ill. 2d 518.) Accordingly, the trial court erred in its finding that $193,571 which was the book value of the stock inherited by the husband and held in the husband's name alone was nonmarital property.

An issue which is related to our determination that Jones Medical

Instrument Co., Inc., is marital property is the valuation of the company. Although we have no way to ascertain the rationale of the trial court in its finding that the adjusted book value of the company was approximately $31,000 greater than the corporation's worth as stated on the company's books, the court, upon remand, should clarify its findings. If this $31,000 increase is due solely to the difference between the fair market value of the Oak Brook real estate and the value for the property carried on the corporate books, then such a finding would be contrary to the manifest weight of the evidence since the three appraisals, when averaged, show an increase of nearly $105,000 over the property's valuation in the company's records and, therefore, would be error. (See *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.) On remand, the trial court should make a new determination as to the value of Jones Medical Instrument Co., Inc., including new appraisals, if necessary, and this amount will be considered marital property.

■■ We do not believe that the trial court erred in finding that the stock trust established by the husband's father prior to the parties' marriage was nonmarital property. The court's finding that the stock trust was segregated from the marital assets of the parties is amply supported by the evidence. Throughout the marriage, the husband reinvested most of the income generated by the trust. Since the stock trust is nonmarital property and since the husband did not commingle with marital property either the trust assets or the income generated by the trust, it follows that the stock trust was properly classified as nonmarital property. (See *In re Marriage of Smith* (1981), 86 Ill. 2d 518.) The appreciation in value of the stock trust was not due to an addition of marital funds, but was due to economic factors and is, therefore, also nonmarital property. *In re Marriage of Komnick* (1981), 84 Ill. 2d 89, 417 N.E.2d 1305.

On remand, it will be necessary for the court to reallocate the property of the parties and, therefore, it is unnecessary to address the second issue raised by the wife in this appeal.

■■ The wife next contends that the trial court erred in failing to award her permanent maintenance. Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act provides that the trial court may award maintenance "only if it finds that the spouse seeking maintenance: (1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and (2) is unable to support himself through appropriate employment * * *, or (3) is otherwise without sufficient income." (Ill. Rev. Stat. 1979, ch. 40, par. 504(a).) In discussing the award of maintenance, the supreme court stated:

> "At all times, the court is to keep in mind that the ultimate objective is to achieve a division of property which is in 'just

proportions.' Where the property available to the defendant spouse is sufficient to satisfy that spouse's needs and entitlements, the use of maintenance should be limited. [Citation.] Thus, if sufficient marital property is found, an award of maintenance may be unnecessary. If there is not sufficient marital property, however, maintenance should be considered." (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 38, 411 N.E.2d 238, 242.)

Since we have determined that the trial court erred in its classification of marital property and that this matter must be remanded for reclassification and reallocation of the property of the parties, it will be necessary to reconsider the issue of maintenance for the wife in light of the foregoing principles.

■■ The final two issues raised by the wife concern the trial court's order that the marital home of the parties be sold and that attorney fees of both parties be paid from the sale proceeds. Although the court found that the marital home was economically unfeasible to retain and that the home was a financial burden to the parties, we do not believe that there are adequate findings to support the court's order for immediate sale. In addition, it has not been called to our attention in the record where either party requested the sale of the home. On remand, the court should be guided by the principles set forth in *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868, and *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164, which outline the circumstances under which a court may order the sale of a marital home. Since we hold that it was error for the court to order the sale of the marital residence because of inadequate findings to support such a sale under *Pieper* and *Blazina* we also must reverse the court's judgment as it pertains to the payment of attorney fees from the proceeds of sale.

Therefore, we affirm that portion of the trial court's judgment which found that the stock trust was nonmarital property, that the home of the parties was marital property and that the pension and profit sharing plan was marital property. We reverse that portion of the trial court's judgment which found that Jones Medical Instrument Co., Inc., was nonmarital property and that the appreciation of the company from the father's death until the dissolution proceedings was marital property since we hold that the company is entirely marital property. We also reverse the court's judgment as it pertains to the barring of an award of maintenance for the wife, the immediate sale of the marital home and the payment of attorney fees from the proceeds of sale because we believe that the ends of justice would be best served by allowing considerable latitude to the court in making the determination necessary in the division of assets as provided by law.

Accordingly, the judgment of the circuit court of Cook County is affirmed in part, reversed in part and remanded to the circuit court for a new trial consistent with this opinion.

Judgment affirmed in part; reversed in part; and remanded.

GOLDBERG and O'CONNOR, JJ., concur.