In re MARRIAGE OF WILLIAM C. JONES, Petitioner-Appellee and Cross-Appellant, and CORINNE JONES, Respondent-Appellant and Cross-Appellee.

First District (1st Division)   No. 1—86—2663

Opinion filed August 1, 1989.

---

*Justice McNamara participated in this appeal prior to his assignment to the sixth division.

208

Feiwell, Galper & Lasky, Ltd., of Chicago, for appellant.

Schiller, Du Canto & Fleck, Ltd., of Chicago (Donald C. Schiller and Sarane C. Siewerth, of counsel), for appellee.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

This is the second appeal brought by respondent, Corinne Jones (Corinne), concerning the disposition of the marital property and the award of maintenance and attorney fees between the petitioner, William C. Jones (William), and Corinne, and it is yet another example of endless litigation, spanning an entire decade.

In *In re Marriage of Jones* (1982), 104 Ill. App. 3d 490, 432 N.E.2d 113 (*Jones I*), this court affirmed in part and reversed in part the trial court's judgment and remanded for further fact finding on certain issues. This court affirmed that portion of the judgment which found that the stock trust was nonmarital property, that the home was marital property, and that the pension and profit sharing plan was marital property. The *Jones I* court reversed part of the judgment and held that Jones Medical Instrument Company, Inc. (Jones Medical), was entirely marital property, and that it was error for the court to order immediate sale of the marital home and pay-

ment of attorney fees from the proceeds of the sale. The *Jones I* court remanded to the circuit court for reclassification and reallocation of the parties' property and for reconsideration on the issue of maintenance for the wife.

Corinne now appeals from the supplemental judgment entered on remand contending the trial court: (1) erred in limiting the scope of discovery and admissibility of evidence to the date of the judgment of dissolution; (2) abused its discretion in its division of the marital property and its award of rehabilitative maintenance; and (3) abused its discretion by not substituting other collateral for her property award. Corinne also asserts that the provisions in the supplemental judgment were against the manifest weight of the evidence. William cross-appeals, contending that the court erred in making any award of maintenance to the wife and in disallowing evidence of Corinne's dissipation of the marital residence.

In addition to filing a cross-appeal, William has also filed a motion to dismiss Corinne's appeal, contending that her notice of appeal was not timely filed.

The parties were married in May 1955. Four children were born of this marriage. In May 1979 William filed a petition for dissolution of marriage. After an extended trial, the details of which are reported in *Jones I* and do not require complete reproduction here, a judgment of dissolution was entered on January 19, 1981. On February 16, 1982, this court reversed and remanded.

Thereafter, both parties began discovery proceedings of the remanded issues. Since part of the procedural history of this case is relevant to our determination, following is a chronological synopsis. Immediately after *Jones I*, Corinne filed a petition for temporary maintenance. On June 18, 1982, the court entered an order directing William to pay temporary maintenance to Corinne in the amount of $2,000 per month, payable in two installments on the 1st and 15th day of the month. Further, in June 1982, the trial court entered an order granting Corinne's attorneys $30,625 in fees for prosecuting the appeal in *Jones I*. Subsequently, by Illinois Supreme Court Rule 23 order, dated August 8, 1983, this court affirmed that decision.

On July 6, 1982, William filed a petition to close discovery which was granted by the trial court on July 21, 1982, setting the close of discovery as of October 22, 1982. On October 21, 1982, Corinne filed a motion to extend discovery at which time the trial court granted the motion and extended discovery, with no further extensions, until February 22, 1983.

In May and June of 1983, William filed his third and fourth mo-

tions for protective orders seeking to limit the scope of discovery. On June 16, 1983, the court entered another order granting William's motion and limiting discovery to those matters relevant to the valuation of property and economic circumstances as they existed on or before January 19, 1981.

On September 14, 1983, a hearing on the remand issues was held before Judge Olson. However, this matter was taken over by Presiding Judge Jorzak and then assigned to Judge Kaufman. On January 31, 1984, Presiding Judge Jorzak entered an order permitting additional discovery but limited said discovery to the issue of maintenance. This ruling was in response to Corinne's petition for rule to show cause against William for past-due maintenance and William's motion to modify the temporary maintenance order which alleged a substantial change in his circumstances.

On October 15, 1984, Judge Kaufman entered another protective order. Following these proceedings and other lengthy and protracted hearings involving over 150 motions and pleadings, *i.e.*, Corinne filed numerous petitions for rule to show cause and for advancement of funds, which produced a voluminous record in excess of 3,000 pages, the court entered a supplemental judgment for dissolution on March 17, 1986, which is the subject of this appeal.

On April 16, 1986, Corinne filed a timely written motion to reconsider the supplemental judgment, and on May 21, 1986, William filed his response. During the hearing on the motion to reconsider on June 11, counsel for Corinne moved orally to supplement the motion with respect to that portion of paragraph A of the judgment which provided Corinne with a lien against William's stock in Jones Medical as security for her property award. This hearing was continued until June 13, 1986. The order of June 13, 1986, denied *instanter* Corinne's written motion to reconsider but granted William 14 days to file a written response to the oral motion. This order also granted Corinne's attorneys 20 days to file any additional fee petitions but denied them leave to file any "fee petition against William for fees incurred after the remand in 1982." On September 9, 1986, William filed his written response. On September 12, 1986, Judge Kaufman modified paragraph A of the supplemental judgment by adding one sentence: "William Jones shall give Corinne written notice of any contract for the sale of the property located at 200 Windsor Drive, Oak Brook, Illinois, during the period in which William Jones' stock is being used as security pursuant to this paragraph." Corinne filed her notice of appeal on September 26, 1986, and William filed his notice of cross-appeal on October 14, 1986.

On October 14, 1986, William simultaneously filed a motion to dismiss Corinne's notice of appeal on the ground that the notice was not timely filed in compliance with Illinois Supreme Court Rule 303 (107 Ill. 2d R. 303). This court ordered that consideration of the motion to dismiss be taken with the case.

Since our jurisdiction generally depends upon timely filing of the notice of appeal, we first address William's contention that Corinne's notice of appeal failed to comply with the applicable statutory requirements.

William contends that this appeal should be dismissed because Corinne did not file her notice of appeal within 30 days of the June 13, 1986, court order denying *instanter* her motion to reconsider. He argues that each party is allowed to file only one post-trial motion, and thus the trial court lacked authority to allow Corinne to file the oral motion on June 11, 1986, almost three months after the entry of the supplemental judgment. William cites *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 255 N.E.2d 900, in support of his arguments.

Corinne contends that under *City of Chicago v. Greene* (1970), 47 Ill. 2d 30, 264 N.E.2d 163, a trial court has discretionary power to allow a party to file a supplementary motion to his or her post-trial motion, and as such, the supplementary motion, if allowed by the trial court, tolls the time for filing an appeal until the court has ruled on the motion. Corinne also cites to *Sears v. Sears* (1981), 85 Ill. 2d 253, 422 N.E.2d 610, in her reply brief. We agree with Corinne.

■ Initially, we point out that portions of the record are not crystal clear concerning the trial court's intentions regarding disposition of Corinne's post-trial motion to reconsider. However, we do believe that the court clearly expressed itself during the colloquy that took place on June 13, 1986. There, the court, as noted by Corinne, stated:

"THE COURT: Okay. Both firms and both people fully understand the Order is not entered and there will be no appeal filed.

MS. GORDON [William's Attorney]: That's correct.

THE COURT: Until the matter [security issue] is determined.

MS. GORDON: There is no reason not to enter the Order as to setting forth all of this.

THE COURT: You set the Order out in the manner I indicated. Where it talks of fees, he objected to that. You set the Order out so it states what I said and I'll enter it.

MS. GORDON: Fine. Thank you.

THE COURT: I do want you to understand there can be then no appealable Order until I return."

We believe it is evident from this discussion with counsel for William that the court did not and was not going to finally determine the post-trial motion on June 13, 1986, but that certain matters were to be determined later, *i.e.*, the issue involving additional security for Corinne's property award and the question of her attorneys' request for fees. The order of June 13, 1986, itself reflects the fact that additional matters were yet to be decided, as the order provided in paragraph 2:

> "The law firm of Feiwell, Galper, Lasky & Berger, Ltd. is granted twenty (20) days leave to file any additional fee petitions which they so desire pursuant to paragraph E, page 8 of the Supplemental Judgment for Dissolution of Marriage. The law firm * * * is denied leave to file a fee petition against William Jones for fees incurred after the remand in 1982 from the Appellate Court."

And in paragraph 3, the order provided:

> "Counsel for William C. Jones is granted fourteen (14) days leave to file a written response to the oral motion of Corinne Jones to modify paragraph A on page 5 of the Supplemental Judgment of Dissolution so as to substitute other collateral for the payment of ONE HUNDRED SEVENTY-FOUR THOUSAND DOLLARS ($174,000.00) to Corinne Jones."

While these matters were not specifically raised in the written post-trial motion filed by Corinne, these matters were considered by the court while the original post-trial motion was pending, and the court did give Corinne leave to orally present these issues and directed William to respond to them. Thus, we believe that *City of Chicago v. Greene* is directly applicable to the situation presented here. As the Illinois Supreme Court stated there, "[t]he issues not raised in the defendant's original post-trial motion but raised by the subsequent post-trial motions of the defendant could have been regarded as a supplement or amendment to his original post-trial motion and it was properly within the discretion of the trial court to have allowed * * * such subsequent motions." (*Greene*, 47 Ill. 2d at 33.) Further, in a hearing on reconsideration, the court may hear additional evidence which might be reason for change in the original order. (See *In re Marriage of Stanley* (1985), 133 Ill. App. 3d 963, 479 N.E.2d 1152.) Here, the trial court, while the original post-trial motion was still pending, clearly allowed Corinne to supplement her pre-

viously filed motion by raising two additional matters. These matters were still pending following the court's June 13, 1986, order and the issue of additional security was not finally determined until the court's order of September 12, 1986, in which it modified a provision in the supplemental judgment pertaining to this issue. As to the matter regarding attorney fees, Corinne's attorneys filed their fee petition in July 1986. Moreover, we view the case relied upon by William to be readily distinguishable from the present case. In *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 255 N.E.2d 900, the operative orders appealed there had become final and appealable long before the appellant filed his motion to vacate, which he had claimed somehow rendered the original orders interlocutory. In this case, the original post-trial motion was still pending at the time the trial court allowed the appellant to supplement her original request. Therefore, the supplement was clearly not in the nature of a successive post-trial motion. (*Sears v. Sears* (1981), 85 Ill. 2d 253, 422 N.E.2d 610.) In *Sears*, a second post-trial motion and not a supplementary or amendatory motion was filed, and it was filed only after the first post-trial motion had been denied and after the time for filing a post-trial motion had expired.

Consequently, we find that the trial court, in a proper exercise of its discretion, allowed Corinne to orally raise the issues on June 11 and 13, 1986. This is so even though the court simultaneously entered its order denying *instanter* the written motion on the theory that the oral motion became a part of the written motion and was either an amendment or supplement thereto, and that once filed continued to toll the time to file the notice of appeal until the court finally disposed of the entirety of the motion. Further, until the entire post-trial motion had been determined, any notice of appeal prior to its final disposition would have been premature and subject to dismissal on appeal. (*Davidson Masonry & Restoration, Inc. v. J.L. Wroan & Sons, Inc.* (1971), 2 Ill. App. 3d 524, 527, 275 N.E.2d 654.) In *Davidson Masonry*, the appellate court found that the notice of appeal was untimely where it was filed prior to the entry of the written order. The court there relied upon its review of the record which showed that the parties and the judge unequivocally intended that the ruling was not final. See also *In re Marriage of Uphoff* (1983), 99 Ill. 2d 90, 457 N.E.2d 426; *In re Marriage of Van Fleet* (1981), 99 Ill. App. 3d 225, 425 N.E.2d 69.

Accordingly, William's motion to dismiss is denied.

Having concluded that this case is properly before us on appeal, we now address the other issues raised by the parties.

### I. LIMITATION OF DISCOVERY AND ADMISSIBILITY OF EVIDENCE

First, we are called upon to determine whether the trial court abused its discretion when it limited the scope and admissibility of evidence to the date the judgment of dissolution was entered.

Corinne argues that the trial court abused its discretion by entering protective orders limiting the scope of discovery and the admissibility of evidence to facts in existence on or before the date of the judgment of dissolution. In particular, Corinne maintains that these limitations were contrary to the specific directives set forth in *Jones I* and argues that where a reviewing court reverses a judgment with specific directives on remand, these directives must be followed exactly. (*Zokoych v. Spalding* (1980), 84 Ill. App. 3d 661, 405 N.E.2d 1220.) Further, Corinne maintains that by limiting the scope of evidence, the trial court acted contrarily to the mandates of sections 503 and 504 of the Illinois Marriage and Dissolution of Marriage Act (hereafter the Act) (Ill. Rev. Stat. 1985, ch. 40, pars. 503, 504).

William, on the other hand, contends that the court in *Jones I* did not give a specific directive but only gave a generally worded mandate on remand, directing the trial court to conduct "a new trial consistent with (its) opinion" (*Jones*, 104 Ill. App. 3d at 501), and thus the trial court properly limited the scope of discovery and admissibility of evidence to January 19, 1981. Additionally, William argued that the trial court's decision fully complied with sections 503(d), 504(b) and 401(b) of the Act. (Ill. Rev. Stat. 1985, ch. 40, pars. 503(d), 504(b), 401(b).) William maintains that Corinne's proper recourse was to file a section 510(a) petition, to show a substantial change in her circumstances, since the entry of the original judgment. (Ill. Rev. Stat. 1985, ch. 40, par. 510(a).) William further argues that during the original trial, the court found that Corinne was in good health, a finding which was neither challenged by Corinne nor disturbed by the appellate court, and therefore, this finding became the law of the case and was *res judicata* in the retrial. *Paulus v. Smith* (1968), 93 Ill. App. 2d 84, 235 N.E.2d 92. See also *Doyle v. Schlensky* (1983), 120 Ill. App. 3d 807, 458 N.E.2d 1120.

■ A trial court upon remand is obligated to proceed in accordance with the reviewing court's mandate. (*David v. Russo* (1983), 119 Ill. App. 3d 290, 456 N.E.2d 342.) A specific mandate must be followed precisely. An example of a specific mandate includes an order directing the trial court to enter a permanent injunction. (*Spring Lake Drainage & Levee District v. Stead* (1914), 263 Ill. 247, 104 N.E. 1014.) However, if specific directions are not given, but the remand instructions are general in nature, the trial court must exam-

ine the opinion and determine what further proceedings would be consistent with the opinion (*In re Marriage of Fuggiti* (1985), 130 Ill. App. 3d 190, 474 N.E.2d 386), "and, in this regard, it may allow the introduction of new evidence if consistent with the announced legal principles" (*Zokoych v. Spalding* (1980), 84 Ill. App. 3d 661, 666, 405 N.E.2d 1220).

In *Jones I*, this court directed that (1) "[o]n remand, the trial court should make a new determination as to the value of Jones Medical Instrument Co., Inc., including new appraisals, if necessary, and this amount will be considered marital property"; (2) "the court, upon remand, should clarify its findings [that the adjusted book value of Jones Medical was approximately $31,000 greater than the value of the company as noted in the company's books]"; (3) "[o]n remand, it will be necessary for the court to reallocate the property of the parties"; and (4) "it will be necessary to reconsider the issue of maintenance for the wife in light of the foregoing principles." *Jones*, 104 Ill. App. 3d at 499-500.

The court also stated there that "if sufficient marital property is found, an award of maintenance may be unnecessary. If there is not sufficient marital property, however, maintenance should be considered." *Jones*, 104 Ill. App. 3d at 500, quoting *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 38, 411 N.E.2d 238.

We believe that this court in *Jones I* gave instructions that were general in nature. The remand order used language, *i.e.*, "clarify its findings" and "new appraisals, if necessary" which was directory, rather than mandatory. *Jones I* in reversing the trial court held that Jones Medical was entirely marital property. Therefore, the remand mandates directed the trial court "to reallocate the parties' property" and to reconsider the issue of maintenance.

Consequently, we find that the language used in the remand order was coupled with directives that were broad to allow the trial court to exercise its discretion to the fullest extent. Thus, the trial court on remand was authorized to analyze the opinion and determine what proceedings were necessary to conform to each of the reviewing court's findings and mandates. (*Zokoych v. Spalding* (1980), 84 Ill. App. 3d 661, 405 N.E.2d 1220.) We believe that the trial court properly reached its decisions in the supplemental judgment in accordance with these principles as set forth in *Zokoych*.

The trial court determined that the proper date to limit discovery and admissibility of evidence regarding valuation of the marital assets and the parties' economic and other circumstances, as they related to the issues of reallocation of property and maintenance, was

January 19, 1981, the date the judgment of dissolution was entered. We will address each issue separately.

## A. MARITAL ASSETS—JONES MEDICAL

It is well established under Illinois law that the date of valuing marital assets is the date the judgment of dissolution was entered (*In re Marriage of Suarez* (1986), 148 Ill. App. 3d 849, 499 N.E.2d 642; *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 167; *In re Marriage of Frazier* (1984), 125 Ill. App. 3d 473, 466 N.E.2d 290; *In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55, 446 N.E.2d 1198), unless the cause is a remanded case and the reviewing court has directed otherwise. (See Ill. Rev. Stat. 1985, ch. 40, par. 503(h).) In *Brooks* and *Rossi*, the trial court entered a judgment for dissolution of marriage on one date and an order resolving the matters of property settlement and maintenance on a later date. In both cases, a substantial amount of time had elapsed between the judgment of dissolution and the judgment on the other issues. Nevertheless, this court there found that the proper date to valuate the closely held corporations was as of the date of dissolution. *Brooks*, 138 Ill. App. 3d at 260; *Rossi*, 113 Ill. App. 3d at 60.

Section 503(h) of the Act provides that "(u)nless specifically directed by a reviewing court, the court shall not on remand consider any increase or decrease in the value of any 'marital' *** property, *** but shall use only that assessment made at the original trial or hearing." (Ill. Rev. Stat. 1985, ch. 40, par. 503(h).) This section apparently incorporates the law in *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 446 N.E.2d 499, and *In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55, 446 N.E.2d 1198.

In *Hofmann*, our Illinois Supreme Court remanded the dissolution proceeding for a determination whether one farm was marital or nonmarital property. The court held it was also proper for the trial court to consider what effect a general decline in farm properties, since the remand, had on the value placed on this farm property, as well as another farm (whose status as marital property was affirmed in appeal), in order to arrive at a proper distribution of property between the parties. *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 225-27.

In *Rossi*, the respondent argued that the trial court had erred when it found that the company, PBW, which was acquired during the parties marriage, was a marital asset. On appeal, this court affirmed that finding, but in light of conflicting expert testimony and other evidence remanded the cause for reconsideration of the value

of the stock of PBW. The court there found that the proper valuation date was the date of dissolution because "to hold otherwise would have the effect of treating appreciation of the corporation subsequent to the dissolution as marital property contrary to section 503(c)(3) of the Act." *In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55, 60, 446 N.E.2d 1198.

Corinne maintains that the language in the opinion "make a new determination as to the value of Jones Medical, including new appraisals, if necessary" implies that the trial court was required to entertain new evidence after January 19, 1981. We disagree. In *Jones I*, this court reversed the trial court's finding that the inherited stock of Jones Medical, valued at $193,571, was the nonmarital property of William, and that the $221,484 increase in the value of the corporation (representing the difference between the adjusted book value of $415,055 and William's stock) was to be considered marital property.

■ The record shows that during the first hearing on the remanded issues on September 14, 1983, the trial court accepted the findings of the original court and the parties' stipulations. The parties stipulated that the value of the building and land owned by Jones Medical was $600,000 and that the net book value of the company was $508,000. Hence, Corinne cannot now avoid the effect of her stipulation where she has not alleged that fraud or duress tainted that stipulation. (*In re Marriage of Skahn* (1986), 149 Ill. App. 3d 764, 501 N.E.2d 229; *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 464 N.E.2d 795.) Additionally, William's personal and business accountant, Lawrence Goldman, who had testified at the original trial, also testified at this hearing on the authenticity of documents which had been admitted into evidence in the original trial, and which were relied upon by the parties in reaching their stipulated figures.

Unlike the reviewing court in *Hofmann*, the court here did not specifically mandate that, upon remand, the trial court should take into consideration any possible increase or decrease in the value of Jones Medical. (*Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 446 N.E.2d 499.) The *Jones I* opinion mandated that the trial court clarify its findings in the judgment of dissolution on the value of Jones Medical, since Corinne had argued there was a $31,000 discrepancy in the court's findings between the company's book value and its adjusted book value. However, this instruction did not specify that the trial court was to clarify its finding by taking into consideration values of the property for the years since January 1981. Hence, we find that the trial court, in accordance with the principles set forth in the

Act and the mandate of *Jones I*, properly limited discovery of the value of Jones Medical to the date of dissolution. Further, it was unnecessary for the court to make a new determination in light of the parties' stipulation. Even if the parties had not entered into a stipulation, the trial court would have been required to do no more than make a new determination on the value of Jones Medical on or before January 19, 1981, to clarify the differentiation in the figures.

Next, we briefly address Corinne's last argument on this issue. Corinne cites to *In re Marriage of Fuggiti* (1985), 130 Ill. App. 3d 190, 474 N.E.2d 386, in her brief for the proposition that a trial court upon remand may hear new evidence under extraordinary circumstances. While Corinne's statement of the law, as enunciated in *Fuggiti*, is correct, we believe that *Fuggiti* is inapposite to the issue of the proper valuation date to assess marital property. *Fuggiti* concerns whether the trial court upon remandment should hear additional evidence before it makes a distribution of property or determines the appropriateness of maintenance (both of these issues will be discussed below) and not the proper date to value property. (*Fuggiti*, 130 Ill. App. 3d at 195.) Further, the *Fuggiti*, court rationalized that "because of the extraordinary circumstances which had arisen after the remanding order," it was proper for the trial court upon remand to take additional evidence since the wife had become seriously ill. (*Fuggiti*, 130 Ill. App. 3d at 195.) Under those circumstances, the court there affirmed the property distribution of the trial court.

Even if we elected to extend the rationale of *Fuggiti* to the issue at hand, this would not assist Corinne. Corinne continually alleged that William was guilty of fraud and that he had secretly started new companies, *e.g.*, Datamatic Services Inc., after the date of the judgment of dissolution, to hide the assets of Jones Medical from her; and therefore, the trial court was required to hear new evidence on the value of Jones Medical post January 19, 1981. However, after several depositions of William and other employees of Jones Medical, requests for production of documents, and petitions to extend and/or reopen discovery, in which Corinne alleged various versions of William's alleged schemes, Corinne was unable to convince any of the several trial judges who heard evidence in this matter of the veracity of her allegations. The court was not required to admit evidence on the value of any assets of Datamatic Services Inc. (See Ill. Rev. Stat. 1985, ch. 40, par. 503.) This company was formed in October 1981, subsequent to the date of the judgment of dissolution. Further, the record disputes Corinne's contentions that the court allowed no evidence on matters occurring after January 19,1981. During one of the

hearings on William's petition to modify the temporary maintenance order held on August 2, 1984, William was questioned extensively about Datamatic, his relationship with that company, and the company's relationship with Jones Medical.

Thus, we find that absent a specific order from the reviewing court pursuant to section 503(h), or a showing of fraud or a sham transaction (see *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 220), the trial court did not abuse its discretion in entering a protective order limiting the scope of discovery and admissibility of evidence on the value of Jones Medical to circumstances on or before January 19, 1981.

### B. DISTRIBUTION OF PROPERTY AND MAINTENANCE

Corinne argues in her brief that the trial court erred by basing its decision in the supplemental judgment on information that was over four years old, and therefore, abused its discretion when it did not allow evidence of her current financial status or the ability of William to meet his and Corinne's needs. Corinne cites to *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 263, 486 N.E.2d 167, *In re Marriage of Fuggiti* (1985), 130 Ill. App. 3d 190, 195, 474 N.E.2d 386, *In re Marriage of Clearman* (1981), 97 Ill. App. 3d 641, 423 N.E.2d 283, and sections 503(d) and 504(b) of the Act (Ill. Rev. Stat. 1985, ch. 40, pars. 503(d), 504(b)) in support of her arguments.

William maintains that Corinne could have properly presented her argument to the trial court in a motion for modification pursuant to section 510(a) if there was a substantial change in the health and economic circumstances of the parties between the remand and the hearing. (Ill. Rev. Stat. 1985, ch. 40, par. 510(a).) We agree and conclude that if a change in the economic circumstances of one or both of the parties did occur between the remand and the new hearing, Corinne's proper recourse was to file a motion for modification pursuant to section 510(a), in which she could have presented any evidence of a substantial change in circumstances. See Ill. Rev. Stat. 1985, ch. 40, par. 510(a).

We further agree with William's contention that *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267, a bifurcated dissolution proceeding, relied upon by Corinne for the authority that the courts must consider the current economic circumstances of the parties, is inapplicable. Section 401(b) pertains to the court's authority to enter bifurcated judgments and provides that the "court *may* enter a judgment of dissolution which reserves any such issues either upon (i) agreement of the parties, or (ii) motion of either party

and a finding \*\*\* that appropriate circumstances exist." (Ill. Rev. Stat. 1985, ch. 40, par. 401(b); *In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 443 N.E.2d 541.) In *Cohn*, the court held that in the absence of "appropriate circumstances," the trial court was precluded from entering a bifurcated judgment that reserved matters involving child custody, child support, spousal maintenance, and property disposition. *Cohn* considered the court's lack of *in personam* jurisdiction over the respondent an appropriate circumstance. The appropriate circumstances requirement need not be satisfied where the parties agree to a bifurcated judgment.

We believe that *Brooks* is inapposite because there the case involved entry of an agreed upon bifurcated judgment, in which the court entered a supplemental judgment disposing of the property and maintenance issues five years after the entry of the judgment of dissolution. In the *Brooks* case, the court considered as a factor that the wife had suffered a series of strokes during the period between the entry of the judgment of dissolution and the supplemental judgment in its property distribution. However, the important difference between *Brooks* and the instant case is that *Brooks* involved an initial disposition of property distribution and award of maintenance and was not a remanded cause of action. By contrast, no authority supports an argument that a case remanded to correct the valuation of property and, thereafter, reconsider all ancillary issues in light of the revaluation warrants a trial *de novo*.

Further, we find that the *Fuggiti* and *Clearman* decisions are readily distinguishable from the instant case. In both cases, this court held that it was proper for the trial court to take additional evidence on remand, where in the interim extraordinary circumstances had arisen. In both cases, catastrophic illness had struck the wife in the period of time between the appellate remand and the retrial. Both courts, as noted by William in his brief, acknowledged that "extraordinary circumstances" had taken place and fashioned the property and maintenance awards to accommodate the new changes.

In the present case, the record shows that at the time of the first hearing on the remanded issues in September 1983, Judge Olson indicated that the court would not consider Corinne's health or economic circumstances post-January 19, 1981.

Shortly thereafter, the judge who held the first hearing was indicted in an unrelated matter. Then, the entire record of this cause was lost and another delay ensued during reconstruction of the file. Next, the matter was reassigned to Judge Kaufman, who conducted a second hearing on the remanded issues and subsequently entered

the supplemental judgment for dissolution on March 17, 1986. The trial judge, when considering the reallocation of property and maintenance, based his findings upon William's income and other economic circumstances of the parties on or prior to January 19, 1981. We conclude that it was unnecessary for the court to make any findings as to matters on the economic circumstances of the parties since 1981. The record reflects that following the remand order no extraordinary circumstances had arisen. The record also divulges that William had suffered a heart attack, but had recuperated. However, while Corinne may not have been in excellent health, she was not handicapped or suffering from any terminal illness (such as lung cancer (*Fuggiti*, 130 Ill. App. 3d 190, 474 N.E.2d 386) or a brain abscess (*Clearman*, 97 Ill. App. 3d 641, 423 N.E.2d 283)).

Accordingly, we find that the trial court did not abuse its discretion when it limited the scope of discovery and admissibility of evidence to circumstances as they existed on or before the date the judgment of dissolution was entered.

## II. WHETHER THE SUPPLEMENTAL JUDGMENT IS SUPPORTED BY THE EVIDENCE

We now direct our attention to Corinne's contentions that the supplemental judgment was against the manifest weight of the evidence and that the court therefore abused its discretion in its: (1) reallocation of property; (2) award of maintenance; and (3) order concerning attorney fees. We address each issue separately.

## A. REALLOCATION OF PROPERTY

The touchstone of apportionment of marital property is whether the distribution is equitable (*In re Marriage of Stone* (1987), 155 Ill. App. 3d 62, 75, 507 N.E.2d 900, 908; *In re Marriage of Campise* (1983), 115 Ill. App. 3d 610, 615, 450 N.E.2d 1333), and each case rests on its own facts. *In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 972, 441 N.E.2d 336.

■ A reviewing court will not disturb a division of marital property unless an abuse of discretion is shown. (*In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 550, 511 N.E.2d 676; *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 414, 464 N.E.2d 795, 802-03.) The standard used to determine whether the trial court has abused its discretion is whether the court, in view of all the circumstances, so exceeded the bounds of reason that no reasonable person would take the view adopted by the trial court. (*In re Marriage of*

*Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267; *In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 207, 445 N.E.2d 811; *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126.) The Act does not require an equal division of marital property, but an equitable division (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37, 411 N.E.2d 238; *In re Marriage of Melnick* (1984), 127 Ill. App. 3d 102, 107, 468 N.E.2d 490), taking into account the listed factors. *In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 318, 453 N.E.2d 866.

The trial court must consider all relevant factors under section 503(d) of the Act when dividing the parties' property.

Pursuant to section 503(d) of the Marriage and Dissolution of Marriage Act, the court shall divide marital property in just proportions considering all relevant factors, including:

"(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective ***;

* * *

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

* * *

(9) whether the apportionment is in lieu of or in addition to maintenance; [and]

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income." Ill. Rev. Stat. 1985, ch. 40, par. 503(d).

The trial court has broad discretion in applying the factors enumerated and is authorized to award either property or maintenance, both property and maintenance, or property in lieu of maintenance. (*In re Marriage of Gan* (1980), 83 Ill. App. 3d 265, 271, 404 N.E.2d 306.) Section 503(d) directs the court to assign each spouse his or her nonmarital property, then to divide the marital property, taking into account the several factors enumerated, in "just proportions." *Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 429 N.E.2d 465.

In the case at bar, during the original trial the court allocated the parties' property as follows:

| | MARITAL | NONMARITAL |
|---|---|---|
| Jones Medical | $221,484 | $193,571 (William) |
| Pension & Profit Sharing Plan | $103,000 | |
| Stock Trust | | $201,463 (William) |
| Marital Home | $230,000 | |
| (Less Encumbrances) | $554,484 | $405,034[1] |

In the judgment of dissolution, the trial court awarded William all of his nonmarital property. The court also ordered that the marital home would be sold and that attorney fees (which totalled $67,882) would be deducted from this sale. Then, after subtracting any remaining costs, the parties were to equally divide the remaining proceeds, estimated at that time to be approximately $230,000.

The judgment of dissolution also provided that Corinne was to receive $200,000 in lieu of maintenance, in full distribution of her interests in the other marital assets, i.e., Jones Medical and the pension and profit sharing plans. According to our calculations, the trial court allocated the marital assets approximately 40% to Corinne and approximately 60% to William.

In the supplemental judgment, the trial court determined the value of the parties' marital property as follows:

| | CORINNE | WILLIAM |
|---|---|---|
| Jones Medical ($435,000) | $174,000 (40%) | $261,000 (60%) |
| Pension Plan | $ 51,500 (50%) | $ 51,500 (50%) |
| | $225,500 | $312,500 |

The final distribution is approximately 42% to Corinne and approximately 58% to William.

The trial court directed that the value of Jones Medical would be apportioned 40% to Corinne and 60% to William since William was the main contributor to the company business and Corinne had little involvement with the company. All right, title and interest in and to Jones Medical was awarded to William, and Corinne was awarded $174,000 plus interest, payable in installments of not less than $20,000 per year. The supplemental judgment also provides that the value of the marital home was $353,000, a figure within the range articulated by the original trial court, and which represents the actual sales price, and that the parties were to equally divide the remaining

---

[1] $405,034 is the figure used in *Jones I* opinion. However, our calculations show that this figure is incorrect. The correct total should be $395,034.

proceeds from this sale.

■ Although the record is unclear on the exact amount of the proceeds remaining from the sale of the home, upon our review of certain documents in the record, we believe that the supplemental judgment entered in 1986 placed Corinne in the same or as good a position that she was in at the time of the judgment of dissolution. At the time of the original judgment, her award of the marital property was $200,000 plus one-half of the proceeds remaining from the sale of the marital home. She was not awarded any maintenance. In 1986, Corinne was awarded $174,000 plus interest, representing her interest in Jones Medical, an additional $36,000 in rehabilitative maintenance, payable in installments of $750 a month for 48 months, one-half of the pension and profit sharing plans and one-half of the proceeds remaining from the sale of the marital home. Our review of the record additionally reveals that William had paid Corinne thousands of dollars in temporary maintenance commencing in 1982, and that he has also paid her attorney fees in excess of $30,000.

Corinne asks this court to disregard all of the above, where she asserts that the most important factors the court must consider when dividing marital property are: (1) the long duration of the marriage and (2) the disproportionate situation where one spouse lacks similar skills and experience as to the other spouse to find appropriate employment, *i.e.*, where one spouse has a steady income as well as the prospect of continued income in the future, and an opportunity for future acquisition of capital assets, and the other does not. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238). However, we note that our courts have also found that when one spouse makes a greater contribution to the marital assets, the court may be justified in awarding him or her a larger share of the marital property. *In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 971, 441 N.E.2d 336.

We believe the trial court properly took all of these factors into consideration. It appears from the record that the court considered the fact that the marital residence had been sold and that the minor child was emancipated. In addition, William was responsible for and had continually paid the children's college education and expenses. Corinne had little involvement with Jones Medical and had contributed little to the marital assets. Moreover, over the years, William had advanced funds to Corinne for payment of her bills, car repairs, and other expenses, in addition to temporary maintenance payments.

Consequently, we reject Corinne's argument that the court's reallocation of property was against the manifest weight of the evidence

and conclude that under the circumstances, the court's 60% apportionment of Jones Medical awarded to William and 40% to Corinne was proper. In some circumstances, one spouse has received substantially more of the marital assets, where for example the spouse was terminally ill (*In re Marriage of Fuggiti* (1985), 130 Ill. App. 3d 190, 474 N.E.2d 386), or the spouse was disabled (*In re Marriage of Clearman* (1981), 97 Ill. App. 3d 641, 423 N.E.2d 283). However, we have found no such facts here. As noted earlier, the record does not show that Corinne was either terminally ill or permanently disabled. William only received 60% of Jones Medical, although the record shows that he contributed substantially more. Therefore, we conclude the court did not abuse its discretion in reallocating the parties' property and we will not disturb its division of marital property.

## B. MAINTENANCE

Next, Corinne maintains that the supplemental judgment of dissolution is unsupported by competent evidence because the trial court violated recent case authority, this court's remand order, and the mandates of section 504 of the Act when it disallowed discovery and the presentation of evidence of the parties' current needs and resources in its (1) award of maintenance to Corinne and (2) determination that each party pay their own attorney fees.

As already noted, William argues that the only portions of the original order that could be addressed on remand were the valuation of Jones Medical and the distribution of property. We have already addressed these arguments and we, thus, decline to comment any further.

William maintains that the court's entry of an award of any maintenance at all to Corinne was an abuse of discretion.

The supplemental judgment found in pertinent part that: Due to the ability of William to take loans from Jones Medical during the years 1978, 1979, and 1980, his income for purposes of determining a maintenance award to Corinne was approximately $77,000, and during the pendency of the proceedings on remand, Corinne could have made an effort to rehabilitate herself, receive job training, or to obtain employment, but she had seen fit not to do so. Accordingly, the court ordered Corinne rehabilitative maintenance of $750 per month for 48 months, commencing March 1, 1986.

Under section 504(a) the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

"(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home; or

(3) is otherwise without sufficient income." Ill. Rev. Stat. 1985, ch. 40, par. 504(a).

Under Section 504(b) the maintenance order shall be determined after consideration of all relevant factors, including:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently ***;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties; [and]

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." Ill. Rev. Stat. 1985, ch. 40, par. 504(b).

Section 504(a) provides that following a dissolution of marriage, maintenance may be awarded only upon a finding by the court that the spouse seeking maintenance meets the requirements listed. This provision has been interpreted by reviewing courts as requiring less than an express finding by the trial court (*In re Marriage of Ales* (1986), 148 Ill. App. 3d 305, 499 N.E.2d 168), and thus reviewing courts have accepted the trial court's determination if the record establishes a manifest basis for determining that maintenance should be awarded. See *In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 441 N.E.2d 336.

■ An award of maintenance is within the discretion of the trial court, and it will not be disturbed by a reviewing court unless there is an abuse of discretion or determination that the award is against the manifest weight of the evidence. (*In re Marriage of Kristie* (1987), 156 Ill. App. 3d 821, 510 N.E.2d 14; *In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 33, 500 N.E.2d 612.) An abuse of discretion will occur where no reasonable man would take the view adopted by the trial court. *In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294; *In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 33, 482 N.E.2d 1022.

■ The benchmark for a determination of maintenance is the rea-

sonable needs of the spouse seeking maintenance in view of the standard of living established during the marriage, the duration of marriage, the ability to become self-supporting, the income-producing property of the spouse, if any, and the value of the nonmarital property. *Bentley v. Bentley* (1981), 84 Ill. 2d 97, 417 N.E.2d 1309.

Again, no one factor is determinative of the issue concerning the propriety of the award or the amount and duration of the award once it has been determined that an award is appropriate. Corinne received no award of maintenance pursuant to the judgment of dissolution. The trial judge there found that she was intelligent, in good health, and given proper time, she could find employment to support herself. Almost immediately after the remand, Corinne filed a petition against William for temporary maintenance and was awarded $2,000 a month. In 1984, William suffered a heart attack and remained in the hospital in a coma for a while. The record shows that this was one of the earliest incidents where William's maintenance payment to Corinne fell in arrears. Later in 1984, William filed a petition pursuant to section 510(a) to modify the temporary support order. Due to several delays, the hearing on this petition was not conducted until October 1984.

At the October 1984 hearing, Judge Kaufman entertained William's section 510(a) petition to modify the support order which allowed him to look at the current circumstances of the parties. (See *In re Marriage of Lasota* (1984), 125 Ill. App. 3d 37, 465 N.E.2d 649.) At this hearing in mid-October and an earlier one held on October 3, 1984, the court heard evidence on most of the factors enumerated in section 504(b) of the Act. On October 3, 1984, Corinne during direct examination stated that a pin had been placed in her hip in 1974 which required removal as soon as possible. She had not seen a doctor because she could not afford one. She also testified that she had difficulty moving about, that William alleged she was a recovering alcoholic, and that she had been unemployed for over 30 years. However, on cross-examination, Corinne testified that she suffered from no serious physical or mental disability and that she continued to perform many of her routine functions of cleaning, driving and shopping. Corinne also stated that she had mailed out a few resumes but had neither completed any employment applications nor done anything else to obtain employment.

Nevertheless, the trial court awarded Corinne rehabilitative maintenance in the amount of $750 a month for 48 months. In the supplemental judgment, the trial court found that Corinne could have made an effort to obtain employment but had seen fit not to do so.

The consideration of the time necessary for the spouse re-

ceiving maintenance to acquire education or training for appropriate employment incorporates the doctrine of rehabilitative maintenance. (Ill. Ann. Stat., ch. 40, par. 504(b)(2), Historical and Practice Notes, at 529 (Smith-Hurd 1980).) Thus, the doctrine of rehabilitative maintenance requires the court to consider: (1) the extent to which the receiving spouse has either the present ability; or (2) the future ability to become self-sufficient; or (3) the future ability to acquire skills that would allow entry into the job market. *In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 633, 450 N.E.2d 1229, 1233-34.

The purpose of the act authorizing such payments (section 504(b)) is to provide incentive for the spouse receiving support to use diligence in procuring employment, training or other necessary skills to attain self-sufficiency. Therefore, our courts have found that awards of rehabilitative or time-limited maintenance may be appropriate (*In re Hackett* (1986), 113 Ill. 2d 286), under circumstances where the evidence indicates future employability. (See also *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447.) Conversely, many courts in Illinois have found that indefinite awards may be appropriate when the spouse seeking support has no realistic prospect of obtaining employment, after a long marriage, especially where the spouse was insulated from the development of skills or a career. (See *In re Marriage of Kristie* (1987), 156 Ill. App. 3d 821, 510 N.E.2d 14.) Still the recipient of an award of indefinite maintenance remains under an affirmative obligation to seek training or education to become financially independent. (*Ingrassia v. Ingrassia* (1987), 156 Ill. App. 3d 483, 509 N.E.2d 729.) Other courts have taken an approach which encourages a spouse to become self-sufficient while also affording the court an opportunity to review the award at the end of a fixed period. (See, *e.g.*, *In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294.) At any rate, an award of maintenance is always reviewable and modifiable, if the requisite requirements are met, under section 510(a). Ill. Rev. Stat. 1985, ch. 40, par. 510(a).

In the instant case, the record does not show that Corinne has no prospect of ever obtaining employment. The judge in 1981 found her to be in good health at that time. As noted above, the record in 1986 did not reflect a substantial or extraordinary change in her circumstances. To the contrary, the record revealed that William had suffered a heart attack and remained hospitalized in a coma for a period of time in 1984. But we have found nothing in the record to indicate Corinne is completely handicapped or that she suffers from any terminal illness or other physical impairment. Compare *In re Marriage of Fuggiti* (1985), 130 Ill. App. 3d 190, 474 N.E.2d 386, and

*In re Marriage of Clearman* (1981), 97 Ill. App. 3d 641, 423 N.E.2d 283.

Consequently, we believe, as the trial court must have concluded, that absent a showing of extraordinary circumstances, Corinne still has a continuing duty to become financially independent. (*Ingrassia v. Ingrassia* (1987), 156 Ill. App. 3d 483, 509 N.E.2d 729.) Nonetheless, in light of Corinne's long absence from the work force and her age, we believe that it was proper for the trial court to award her rehabilitative maintenance. Hence, we find that the trial court did not abuse its discretion in its award of rehabilitative maintenance to Corinne.

### C. ATTORNEY FEES

William maintains that given the history of the case, particularly Corinne's abusive use of the legal process, her dissipation of the marital home, and her refusal to use her maintenance payments for her living expenses, the court did not abuse its discretion by ordering each party to pay his or her own attorney fees.

Under section 508 the trial court may order either spouse to pay a reasonable amount for his own attorney fees and those of his spouse.

The award of attorney fees is within the sound discretion of the trial court, and absent an abuse of discretion, a court of review will not disturb that decision. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299, 483 N.E.2d 1229, 1235; *In re Marriage of Stockton* (1988), 169 Ill. App. 3d 318, 328, 523 N.E.2d 573.

The payment of attorney fees is the primary obligation of the party on whose behalf the services are rendered. (*In re Marriage of Meyer* (1986), 140 Ill. App. 3d 1031, 489 N.E.2d 906.) However, the trial court does have the authority to order one spouse to pay the other spouse's attorney fees and cost. (*In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 483 N.E.2d 692.) The party seeking fees must show (1) an inability to pay and (2) the ability of the other spouse to pay the fees. (*Bussey*, 108 Ill. 2d at 299-300; *In re Marriage of Pehlke* (1987), 154 Ill. App. 3d 256, 263, 507 N.E.2d 71.) In addition, in exercising its discretion to award attorney fees, the trial court may consider the circumstances prompting the litigation. *In re Marriage to Cotton* (1984), 103 Ill. 2d 346.

The supplemental judgment entered March 17, 1986, provides in pertinent part that each party is to pay his or her own attorney fees. Corinne's attorney requested that the court reconsider this ruling. The court denied the motion by its order entered on June 13, 1986. However, the court also granted Corinne's attorneys leave to file a fee petition which they filed in July 1986. Implicit in the court's

order of September 12, 1986, which only allowed relief concerning the security for distribution of the Jones Medical property, is the denial of the fee petition.

The petition requested fees and cost from William in the amount of $101,627.07 for services performed for the period of time after January 21, 1982, through March 31, 1986. Corinne, however, did not request a hearing on the payment of attorney fees. Courts in Illinois have held that a party waives his right to a hearing on attorney fees where he did not request a hearing before the trial court and is thereby left with the judge's ruling on the basis of the fee petition and affidavits alone. Thus, we hold that Corinne has waived the right to such a hearing. Accord *In re Marriage of Lord* (1984), 125 Ill. App. 3d 1, 6-7, 465 N.E.2d 151; *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 466, 426 N.E.2d 108.

### D. SECURITY FOR PROPERTY AWARD

Finally, Corinne contends that the trial court abused its discretion by failing to adequately secure her property distribution interest. In *Jones I*, this court held that Jones Medical was to be considered entirely marital property. Similar to other cases where a closely held corporation has been classified as marital property, the trial court on remand was faced with a dilemma—how to properly divide the marital asset between the parties, and hopefully, keep the business operational.

Courts in Illinois have generally declined to divide business interests between the parties when the business is a closely held corporation, and therefore, have considered various options, from public sale of the corporation to directing one spouse to pay a fair market value of an apportioned share of the business to the other spouse. (See, *e.g., In re Marriage of Rossi*, 113 Ill. App. 3d 55, 446 N.E.2d 1198.) The courts have also agreed that where the marital property is not susceptible to a just division in kind, the spouse who receives the whole is obligated to make an equalizing cash payment to the other spouse (*In re Marriage of Rapacz* (1985), 135 Ill. App. 3d 1045, 482 N.E.2d 441), and that to secure this equalization payment, the spouse who receives the whole must pledge certain collateral for the installment payments (such as the business stock to the other spouse). *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267.

In the case at bar, as noted above, pursuant to paragraph A of the supplemental judgment of dissolution, the court awarded Corinne 40% of the value of Jones Medical and ordered that William would pay her $174,000, payable in installments of not less than

$20,000 a year. The court also ordered that William Jones' stock be placed in escrow and that the balance due Corinne would serve as a lien against the stock. Corinne's oral motion of June 13, 1986, suggested that the court substitute corporate real estate for the stock or grant her a security interest in "additional properties" as security for this property award.

Although the trial judge denied this request, he did in his ruling of September 12, 1986, modify paragraph A, to require William to provide Corinne with written notice of an intent to sell the real property owned by the corporation during the time in which his stock was to be used as security.

We believe that the trial court's order in the supplemental judgment of dissolution, as it pertained to William's pledge of collateral, more than adequately protects Corinne's property interest, in addition to allowing William to freely run Jones Medical. In the event William fails to make a timely payment to Corinne, she can exercise her right to perfect the lien against the stock for the unpaid balance owed. The value of the stock is $193,571, almost $20,000 more than the total amount William is required to pay Corinne.

In addition, the court's modification of the supplemental judgment on September 12, 1986, further protects Corinne's interest. In the event William attempts to reduce or nullify the value of the corporation by, for example, selling a major asset of the corporation, i.e., the real estate which was valued by stipulation at $600,000, Corinne will have prior notice and, therefore, should have ample warning to take measures to protect her property. If William sells the property without prior notice, he will be subjected to contempt of court and other sanctions for violation of the court's order.

Hence, we likewise affirm this portion of the court's order and find that the lien is sufficient to secure Corinne's property interest until the $174,000 judgment awarded to Corinne is satisfied. See *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 167.

## CROSS-APPEAL

In his cross-appeal, William claims that the trial court erred in granting Corinne four more years of maintenance. He asserts that in the event this court orders that this case be retried yet again, he wishes to raise the issue of Corinne's dissipation of the marital residence on the theory that all pertinent post-decree evidence should be allowed. The issue of maintenance has been adequately addressed above.

As to the issue of the dissipation of the marital residence,

we agree with William's contention that it is a relevant factor in determining the distribution of property. The trial judge found that the actual sale price of the property ($353,000) was within the range ($344,000) articulated by the judge in the judgment of dissolution. The judge then ruled that the parties should evenly split the proceeds remaining from the sale of the home. The record indicates that based upon these findings, the judge declined to take into consideration the issue of dissipation. However, we will briefly address the issue of dissipation of the marital residence in an effort to determine whether the trial court abused its discretion by not considering any evidence on the matter.

The dissipating party need not derive a personal benefit from the dissipation in order to be held accountable. For example, a spouse's failure to make mortgage payments and prevent foreclosure of a family home, which results in a loss of equity therein, can constitute dissipation. (See, e.g., In re Marriage of Aslaksen (1986), 148 Ill. App. 3d 784, 500 N.E.2d 91; In re Marriage of Siegel (1984), 123 Ill. App. 3d 710, 463 N.E.2d 773.) Further, where a party has dissipated marital assets, the court may charge the amount dissipated against that party's share of marital property in order to compensate the other party. See In re Marriage of Brooks (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267; In re Marriage of Lord (1984), 125 Ill. App. 3d 1, 465 N.E.2d 151.

The record shows that the parties lost equity in the marital estate after the payment of liens, encumbrances, repairs, and other expenses. Thus, if we were to conclude that nonpayment of the mortgage and other home-related expenses amounted to dissipation, we would likewise find that the party who was responsible for the dissipation of this marital asset should have his or her share of marital property reduced accordingly. However, the record is unclear who was responsible for the payment of the mortgage during the remand. Accordingly, in light of this factor, the fact that the home was sold, and the trial court's determination that the parties should evenly divide the remaining proceeds, we find no abuse of discretion.

Accordingly, for the foregoing reasons, we affirm the supplemental judgment of dissolution.

Judgment affirmed.

QUINLAN and O'CONNOR, JJ., concur.